IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Action No. RDB-15-290 |
| TERCEL BAKER, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM ORDER

On November 30, 2015, Tercel Baker ("Baker" or "Petitioner") pled guilty to one count of possession with the intent to distribute 28 grams or more of cocaine base ("crack cocaine" or "crack") in violation of 21 U.S.C. § 841(a)(1). (Plea Ag't 1–2, ECF No. 42.) This Court sentenced Baker to 144 months (or 12 years) of incarceration on March 15, 2016. (Judgment, ECF No. 59.) Now pending are four Motions made by the Petitioner: (1) a Motion for Compassionate Release pursuant to 28 U.S.C. § 3582(c)(1)(A), (ECF No. 85); (2) a Motion for Appointment of Counsel, (ECF No. 82); (3) a Motion for Appointment of a Federal Public Defender, (ECF No. 84); and (4) a Motion to Compel, (ECF No. 83).[1] This court has reviewed both parties' submissions, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated herein, all four of Petitioner's Motions are hereby **DENIED**.

---

[1] Baker's Motion to Compel seeks a court order directing the Warden of FCI Raybrook to stop allegedly withholding transcripts which Baker has requested in order to file an unspecified appeal. (ECF No. 83.) Baker further alleges—but provides no evidence—that "the courts" ordered the Warden to withhold these transcripts. (*Id.*) Defendants are not "entitled to obtain documents at government expense absent a showing of particularized need." *United States v. Clemmer*, No. CV AW-08-3109, 2008 WL 5381904, at *1 (D. Md. Dec. 18, 2008); *see also United States v. Shoaf*, 341 F.2d 832, 833–34 (4th Cir. 1964)). Because Baker provides no legal or factual evidence of particularized need, and no support for his other assertions, his Motion to Compel is hereby **DENIED**.

## BACKGROUND

On May 20, 2015, Baker was charged with (1) possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); (2) possession with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a); and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). (Indictment 1, ECF No. 1.) The stipulated facts included in Baker's subsequent plea agreement describe the traffic stop from which Baker's charges stem:

> On January 8, 2015, members of the Maryland State Police and Homeland Security Investigations conducted covert surveillance inside the Rainbow View Apartment Complex in Glen Burnie. They observed their target, Tercel Baker, exit his apartment and enter the driver's side of a Gold Lexus SUV. The officers followed Baker as he drove out of the complex.
>
> They observed Baker commit several traffic violations . . . and initiated a traffic stop. After speaking with Mr. Baker and observing his demeanor, a K9 was ordered to scan the car, resulting in a positive alert for the presence of contraband. Officers searched the car and recovered an unmarked bottle with 26 oxycodone pills. . . . [Thereafter,] Baker was arrested and searched . . . [and] Officers found 14.4 grams of crack in Baker's underwear.
>
> Officers applied for and received a search warrant for Baker's Rainbow View apartment. In the bedroom closet officers recovered 42.84 grams of marijuana and an additional 45 grams of crack. All the narcotics were packaged for individual sale. They also found a High Point .40 caliber firearm with an obliterated serial number, and 50 rounds of ammunition in the same closet and over $12,000 in cash.

(ECF No. 42 at 4–5.)

On December 7, 2015, Baker pled guilty to Count Two of the Indictment, charging him with possession with the intent to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1). (ECF No. 42.) The parties stipulated to a base offense level of 24, pursuant to U.S.S.G. § 2D1.1(c)(8), and agreed that Baker qualifies as a career offender,

2

pursuant to U.S.S.G. § 4B1.1, yielding a base offense level of 34 and a criminal history category of VI. (*Id.* at 5.) That level was reduced to 31 based on Baker's acceptance of responsibility. (*Id.*) In light of these considerations, the United States Sentencing Guidelines provided for an imprisonment range of 188 to 235 months, based on a total offense level of 31 and a criminal history category of VI. (ECF No. 46 at 16, ¶ 65.) However, the parties agreed to a sentencing range of 120 months to 180 months. (ECF No. 42 at 6–7.) On March 15, 2016, this Court accepted this guilty plea and sentenced Baker to 144 months imprisonment—a sentence 44 months below the advisory Guidelines range, and in the middle of the agreed-upon sentencing range in the plea agreement. (ECF No. 59.)

One year later, on March 13, 2017, Baker filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255, alleging that he received ineffective assistance of counsel and that he was improperly classified and sentenced as a career offender. (ECF Nos. 61, 61-1). On September 13, 2017, this Court denied that Motion, (Sept. 13, 2017 Mem. Ord., ECF No. 75), finding that Baker's ineffective assistance claims were "either invalid in light of his statements under oath or do not meet the legal standard necessary to accord him relief under § 2255," and that "resentencing [Baker] without the Career Offender enhancement would have no effect on his sentence." (Sept. 13, 2017 Mem. Op. 7, 13, ECF No. 74.) Baker then appealed this Court's denial of his Motion to Vacate on October 20, 2017, (ECF No. 76), but the Fourth Circuit Court of Appeals denied him a certificate of appealability because he did not make "a substantial showing of the denial of a constitutional right." (Fourth Cir. J. 2–3, ECF No. 79.) Accordingly, his appeal was dismissed by the Fourth Circuit on April 2, 2018. (*Id.*)

Baker now urges this Court to grant him compassionate release. (*See* ECF No. 85 at 1.) In support of his motion, Baker argues that he has been diagnosed with anxiety, Sjogren's, and Sicca Syndrome—medical factors that he contends elevate his risk of contracting a severe case of COVID-19 during his incarceration. (*Id.* at 1–4.) Additionally, Baker argues that intervening changes in sentencing law regarding crack cocaine offenses justify compassionate release in this case. (Suppl. 1–2, ECF No. 88.) Finally, Baker requests the appointment of counsel and/or of a Federal Public Defender to assist him in presenting his motions. (*See* ECF Nos. 82, 84.) These motions are ripe for review.

## MOTION FOR COMPASSIONATE RELEASE

The Supreme Court has held that pro se filings are "liberally construed" and must be "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). As Baker is not represented by counsel, his motions are reviewed using this more lenient standard, and his arguments for compassionate release are interpreted liberally.

The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison. Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with the Court. With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a reduction in sentence. The Act permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

4

defendant's behalf or the lapse of 30 days from the receipt of such a request by the Warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" warranting a reduction and after weighing the factors presented in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i).

## I. Administrative Exhaustion Requirements

Baker has satisfied the necessary predicates to filing his compassionate release motion. To establish that he has exhausted all administrative remedies, Baker attached a letter from the Warden of FCI Raybrook dated May 5, 2021, denying Petitioner's request for the Bureau of Prisons to file a motion for compassionate release on his behalf. (Pet'r's Exs., ECF No. 85-1.) The government appears to argue that Baker failed to exhaust the administrative appeal process within the Bureau of Prisons—acknowledging that "[t]he Defendant has filed the necessary paperwork with the Warden of his facility, which was denied," while arguing that "[Baker] failed to exhaust administrative remedies." (ECF No. 92 at 3.)[2]

Baker has not offered evidence that he pursued all administrative remedies within the Bureau of Prisons. However, more than thirty days elapsed between the time Baker submitted his request to the Warden and the time he filed his Motion for Compassionate Release. Accordingly, Baker's Motion for Compassionate Release is properly before this court. *See* 18

---

[2] The government misstates the law to make this argument. The government claims that "an inmate cannot move for compassionate release until he has exhausted administrative remedies with the Bureau of Prisons ('BOP') or by showing that the BOP failed to respond to his request within 30 days." (Resp. Opp. 3.) That is not what § 3582(c)(1)(A) provides. The compassionate release statute allows a defendant to bring suit on his own behalf after exhausting administrative remedies within the BOP, or upon "the lapse of 30 days from the *receipt of such a request by the Warden of the defendant's facility*, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added).

5

U.S.C. § 3582(c)(1)(A) (providing that a defendant may file a compassionate release motion once they have exhausted all administrative remedies or thirty days have elapsed since they submitted their request, "whichever is earlier"); *see also United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021) ("The text of § 3582(c)(1)(A) plainly provides that a defendant may file a motion on his own behalf 30 days after the warden receives his request, regardless of whether the defendant exhausted his administrative remedies.").

## II.     Extraordinary and Compelling Circumstances

The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t). Of relevance here, the Commission has determined that "extraordinary and compelling reasons" exist where a defendant is "suffering from a serious physical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Similarly, a defendant who is "(i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less," faces extraordinary and compelling circumstances that may justify release. U.S.S.G. § 1B1.13 cmt. n.1(B). Finally, the Commission has authorized the Bureau of Prisons to identify other extraordinary and compelling reasons "other than, or in combination with" the reasons identified by the Commission. U.S.S.G. § 1B1.13 cmt. n.1(D).

Although potentially useful guides, neither the Sentencing Commission's guidelines nor the Bureau of Prisons' regulations constrain this Court's analysis. *United States v. McCoy*, 981

F.3d 271, 281 (4th Cir. 2020) (holding that U.S.S.G. § 1B1.13 is not an "applicable policy statement" for compassionate release motions filed by a defendant in the wake of the First Step Act). As Judge Blake of this Court has recognized, the First Step Act embodies Congress's intent to reduce the Bureau of Prisons' authority over compassionate release petitions and authorizes the district courts to exercise their "independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Bryant*, CCB-95-0202, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020); *accord McCoy*, 981 F.3d at 281 (holding that "the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling'").

Baker argues that two "extraordinary and compelling" circumstances justify his release: (1) an intervening change in sentencing law for crack cocaine offenses, (ECF No. 88); and (2) certain medical factors that he claims elevate his risk of contracting a severe case of COVID-19 in prison, (ECF No. 85.) Additionally, Baker challenges the validity of his sentence, arguing he should not have been sentenced as a Career Offender. (*Id.* at 8–9.) The government opposes all three grounds, arguing that the health concerns and legal developments Baker highlights do not constitute extraordinary and compelling reasons for a sentence reduction, and that compassionate release is not an appropriate vehicle for Baker to challenge the validity of his career offender classification. (ECF No. 92 at 1.) For the following reasons, this Court finds that Baker fails to offer any extraordinary or compelling reasons to consider compassionate release in this case.

A. Susceptibility to COVID-19

Exercising its discretion under the First Step Act, this Court has determined that a defendant's heightened susceptibility to COVID-19 may constitute an extraordinary and compelling reason for a sentence reduction. *See, e.g.*, *United States v. Hurtt*, No. JKB-14-0479, 2020 WL 3639987, at *1 (D. Md. July 6, 2020). However, "the coronavirus is 'not tantamount to a get out of jail free card.'" *United States v. Hiller*, No. ELH-18-0389, 2020 WL 2041673, at *4 (D. Md. Apr. 28, 2020) (Hollander, J.) (quoting *United States v. Williams*, No. PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020)). Accordingly, for COVID-19 to constitute an "extraordinary and compelling" circumstance in a given case, the defendant must allege that they have a "particularized susceptibility" to COVID-19. *See, e.g.*, *United States v. Petway*, No. 21-6488, 2022 WL 168577, at * 2 (4th Cir. Jan. 19, 2022).

Here, Baker claims that his Sicca Syndrome makes him "fear" that he will contract COVID-19 and in turn, he posits his anxiety will worsen. (ECF No. 85 at 8.) Although he does not specifically allege that he is especially vulnerable to COVID-19, this Court construes his claims liberally and infers that his particularized susceptibility is implied. *See Erickson*, 551 U.S. at 94. The government responds that Baker's medical history and evidence of effective treatment demonstrate that his health concerns do not rise to the level of extraordinary and compelling justifications for release. (ECF No. 92 at 6.) This Court agrees.

First, the government argues that Baker's vaccination status precludes compassionate release because he is fully vaccinated against COVID-19. (*Id.*) Although vaccination status is not a *per se* bar to compassionate release on a theory of susceptibility to COVID-19, this Court has previously recognized that a defendant's vaccination reduces the risk posed by infection.. *See United States v. Harris*, No. RDB-16-364, 2022 WL 1062029, at *3 (D. Md. Apr. 8, 2022),

8

*appeal dismissed*, No. 22-6490, 2022 WL 14955090 (4th Cir. Sept. 7, 2022) ("[W]hile the pandemic has 'created an elevated risk for [Defendant] and others in BOP facilities, the rollout of three vaccines for COVID-19 . . . has lowered that risk in recent months.'" (quoting *United States v. Maynor*, No. RDB-17-280, 2021 WL 3269086, at *3 (D. Md. Jul. 30, 2021)). Similarly, in *United States v. Salas*, the Fourth Circuit recognized that "it is undisputed" that a defendant's risk of contracting a severe case of COVID-19 "is lowered due to his vaccination status" and that his "risk factors combined with his vaccinations did not present an extraordinary and compelling reason for his release." No. 22-6371, 2023 WL 3918695, at *2 (4th Cir. June 9, 2023).

Applying the analytical approach offered in *Salas*, and considering Baker's risk factors alongside his vaccination status, this Court concludes that Baker's medical conditions are insufficiently extraordinary and compelling to warrant compassionate release. Baker is fully vaccinated, reducing his risk of contracting a severe case of COVID 19. (ECF No. 85.) Additionally, while Baker claims that he suffers from anxiety and Sicca Syndrome, the evidence on record suggests that these conditions have been adequately treated and remediated. In denying Baker's administrative request for compassionate release, the Warden observed that Baker's Sicca Syndrome was "resolved," that he was taking medication for his anxiety, and that he had only one documented visit to the psychology department since his incarceration in 2010. (ECF No. 85-1 at 1.) The general possibility that contracting COVID-19 may worsen anxiety for which Baker has not sought further treatment in over a decade does not rise to the level of an extraordinary and compelling reason for release. Additionally, because Baker is

vaccinated and his medical records indicate that his Sicca Syndrome is asymptomatic, this condition does not suggest that he is particularly susceptible to COVID-19. (ECF No. 85-1.) As Baker's "moderate (and very common) risk factors" have not required significant treatment in some time, and as Baker is fully vaccinated for COVID-19, this Court concludes that his medical conditions are insufficiently extraordinary and compelling to warrant compassionate release. *Cf. Salas*, 2023 WL 3918695, at * 2.

B. <u>Intervening Changes in Sentencing Law</u>

Just as a particularized susceptibility to COVID-19 may constitute extraordinary and compelling reasons for release, intervening changes in sentencing law may also justify a sentence reduction to time served. *United States v. Concepcion*, 142 S. Ct. 2389, 2404 (2022); *accord United States v. Smith*, 379 F. Supp. 3d 543, 546 (W.D. Va. 2019) ("Congress, when drafting the First Step Act in 2018, surely did not intend for courts to disregard the years of Supreme Court federal sentencing jurisprudence."); *McCoy*, 981 F.3d at 285 ("[T]he severity of a . . . sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief."); *see also United States v. Day*, 474 F. Supp. 3d 790, 805 (E.D. Va. 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 979–81 (C.D. Cal. 2020). As Chief Judge Bredar observed last year in *United States v. Elzey*, "a change in career offender status, and a consequent change in the appropriate Guidelines sentencing range, can qualify as an extraordinary and compelling reason warranting compassionate release." JKB-09-0288, 2022 WL 316717, at *3 (D. Md. Feb. 2, 2022); *see also United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md. 2020) (Blake, J.); *United States v. Redd*, 444 F. Supp. 3d 717, 722–23 (E.D. Va. 2020).

Baker argues that if he were sentenced today, he "would likely receive the benefit" of alleged "DOJ current policy recommending that judges sentence defendants like Petitioner Baker . . . without regard to the 18:1 ratio for crack and powder cocaine." (*See* ECF No. 88 at 1-2.) The government points out, however, that the agreed upon sentencing range in his plea was not based solely on a crack cocaine offense because Baker was charged with possessing "crack, oxycodone, a firearm and fifty rounds of ammunition," and had "a history of drug distribution *and was on supervised release for a firearm* [offense] at the time of this crime." (ECF No. 92 at 11 (emphasis in original).) This Court agrees with the government. The sentencing range stipulated in the plea agreement, and accepted by this Court, reflects Baker's possession of several forms of contraband and his extensive history of drug and firearm offenses. These considerations go far beyond Baker's possession of crack cocaine. Accordingly, while modern DOJ policy may suggest that "the current cocaine sentencing disparity is difficult to justify," (ECF No. 88 at 3 (citing *United States v. Dublin*, No. CR 1:03-834, 2021 WL 5997543, at *2 (D.S.C. Dec. 20, 2021)), that policy is not sufficiently "extraordinary and compelling" to justify compassionate release in this case.

    C.   <u>Challenge to Career Offender Status Sentencing Enhancement</u>

Baker previously filed a Motion to Vacate pursuant to 28 U.S.C. § 2255 where he claimed that he was improperly classified as a career offender, as one of his predicate offenses culminated in an Alford Plea, rather than a traditional guilty plea or judgment of conviction. (ECF No. 61.) This Court denied that petition on October 20, 2017. (Mem. Order, ECF No. 75.) In support of the instant motion for compassionate release, Baker once again argues that his career offender designation was invalid, as his Alford Plea could not be used as a predicate

for career offender enhancement. (ECF No. 85, at 8.) The Government argues that Baker's resurrection of this argument should be denied as a second and successive habeas petition. (ECF No. 68, at 17–18.) This Court agrees.

The Supreme Court has held that a collateral motion that "attacks the federal court's previous resolution of a claim on the merits" is properly recharacterized as a successive habeas petition. *Gonzales v. Crosby*, 545 U.S. 524, 532 (2005); *accord United States v. Winestock*, 340 F.3d 200, 207 (4th Cir. 2003), *abrogated in part on other grounds by United States v. McRae*, 793 F.3d 392 (4th Cir. 2015) ("[A] motion directly attacking the prisoner's conviction or sentence will usually amount to a successive application."). Baker's challenge to his career offender designation is a collateral attack on the validity of his sentence and is not the proper subject of a motion for compassionate release. Accordingly, this Court characterizes this argument as a petition for relief under 28 U.S.C. § 2255. As Baker has already filed a habeas petition, and that petition was denied, he may only present this argument if he receives precertification from the United States Court of Appeals for the Fourth Circuit. 28 U.S.C. § 2255(h)(1)-(2). And as Baker has neither alleged nor shown that he has obtained permission from the Fourth Circuit to bring a successive habeas petition, his collateral attack is denied.

### III.   18 U.S.C. § 3553(a) Factors

In *McCoy*, the Fourth Circuit made clear that "not all defendants convicted under § 924(c) should receive new sentences," and that "courts should be empowered to relieve some defendants of those sentences on a case-by-case basis." 981 F.3d at 286–87. Accordingly, a court must conduct an "individualized assessment" under § 3553(a) to determine a defendant's eligibility for a reduction. *McCoy*, 981 F.3d at 286. These factors require this Court to consider:

(1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline range; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a); *Bryant*, 2020 WL 2085471 at *4.

To support his argument that the § 3553(a) factors weigh in favor of his release, Baker claims that he has been rehabilitated, as he has been participating in "programs to better [his] life." (ECF No. 85.) He offers evidence that he has participated in parenting courses and prison education courses, (*see* ECF No. 85-1), and that he completed almost 1400 hours of GED and other classes between 2010 and 2013. (*Id.*) Additionally, Baker offers some indication of a release plan—he claims that he will live with his wife and four children, and offers to remain on supervision if he is released. (*Id.*) The government opposes Baker's arguments, noting "relief would send the message that [Baker] can avoid accountability" and "messages of that kind do not keep the public safe." (ECF No. 92 at 12-13.) It further avers that Baker should remain incarcerated "to account for the seriousness of his crimes . . . to promote respect for the law, and to provide just punishment." (*Id.*)

While Baker's rehabilitative efforts while incarcerated are commendable, the § 3553(a) factors weigh against Baker's release. This conclusion stems from the "nature and seriousness" of the offense, the imperatives of just punishment, deterrence, and public protection, and the defendant's history of recidivism. *See* 18 U.S.C. § 3582(c)(1)(A)(1)–(3). Criminal activities involving drug-trafficking and illegal firearms are dangerous and put the community at risk.

13

Baker has a long history of such conduct—the record reflects that he has been arrested and convicted on narcotics trafficking and firearm charges multiple times. (ECF No. 46.) Accordingly, while Baker has served over 75% of his sentence as of July 2023, his pattern of recidivism suggests that continued incarceration is necessary to protect the public and promote respect for the law. (ECF No. 46.) Moreover, immediate release would fail to reflect the seriousness of Baker's personal history of repeat infractions and undermine respect for the law. (ECF No. 42.)

Additionally, this Court notes that Baker received a sentence comfortably within the parties' stipulated range, and significantly below "the applicable guideline range." 18 U.S.C. § 3582(c)(1)(A)(5). As discussed above, Baker stipulated to a base offense level of 34 and a criminal history category of VI, yielding a Guidelines range of 188 to 235 months. (ECF No. 46 at ¶ 65.) However, the parties agreed to a sentencing range of 120 months to 180 months, (ECF No. 42 at 6–7), and this Court sentenced Baker to only 144 months incarceration, (ECF No. 59). As Baker already received a sentence below the advisory guidelines' range, and he presents no allegations regarding sentencing disparities between similarly situated defendants, this Court finds that Baker's current sentence is "sufficient, but not greater than necessary" to reflect the nature of his offense, his criminal history, and his personal characteristics.

Although Baker exhausted his administrative remedies, he fails to establish that extraordinary and compelling reasons warrant compassionate release, and the 3553(a) factors weigh against his sentence being reduced to time served regardless. Accordingly, his Motion for Compassionate release is hereby **DENIED**.

## MOTIONS FOR APPOINTMENT OF COUNSEL

Generally speaking, there is no constitutional right to appointed counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *United States v. Williamson*, 706 F.3d 405, 416 (4th Cir. 2013); *United States v. Jones*, No. RDB-10-232, 2021 WL 2805947, at *4 (D. Md. July 6, 2021). Courts have discretion to appoint counsel in proceedings under 18 U.S.C. § 3582(c) if the interests of justice so require. *See United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000); *see also United States v. Reed*, 482 F. App'x 785, 786 (4th Cir. 2012); *cf.* 18 U.S.C. § 3006A(a)(2)(B) (providing interests of justice standard for appointment of counsel in similar post-conviction proceedings). Additionally, "[w]here a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard vs. U.S. District Court*, 490 U.S. 296, 298 (1989).

First, it appears to the Court that Baker has "demonstrated the wherewithal" to present his claims. *Love v. Rumgay*, No. CV RDB-13-1402, 2013 WL 6094670, at *2 (D. Md. Nov. 18, 2013). Secondly, the Federal Public Defender's office has already reviewed this case and declined to represent Baker. (ECF No. 87.) While that fact is not dispositive to the success of Baker's motions, neither of his submissions to the court provide any new reasons why he should have an attorney appointed to represent him. (ECF Nos. 82, 84.) His only argument is that he received ineffective assistance of counsel, which this Court already rejected in denying Baker's Motion to Vacate. (*See* ECF Nos. 74, 75.) Because Baker has retained private counsel in the past, offers no reason why the interests of justice require the appointment of an attorney,

and offers no extraordinary and compelling reasons to support his motion for compassionate release, his Motions to Appoint Counsel are **DENIED**.

## CONCLUSION

For the reasons stated above, it is hereby **ORDERED** this 24th day of July, 2023, that Defendant Tercel Baker's Motion for Compassionate Release, Motion to Compel, and Motions for Appointment of Counsel are **DENIED.**

\_\_\_/s/_____
Richard D. Bennett
United States Senior District Judge